**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Nina Y. Wang**

Case No. 26-cv-01241-NYW

SAMUEL MAURICIO GONZALEZ POLANCO,

Petitioner,

v.

JUAN BALTAZAR, in his official capacity
GEORGE VALDEZ, in his official capacity,
TODD LYONS, in his official capacity,
MARKWAYNE MULLIN, in his official capacity, and
TODD BLANCHE,[1] in his official capacity,

Respondents.

_____

**MEMORANDUM OPINION AND ORDER**
_____

This matter is before the Court on the Petition for Writ of Habeas Corpus (the "Petition"), [Doc. 1], and the Emergency Motion for Immediate Release and Request for Temporary Restraining Order ("Motion"), [Doc. 2]. Respondents filed a consolidated response in opposition, [Doc. 8], and Petitioner has replied, [Doc. 9]. For the reasons set forth in this Order, the Petition is respectfully **GRANTED in part**.

**BACKGROUND**

Petitioner Samuel Mauricio Gonzalez Polanco ("Petitioner" or "Mr. Gonzalez Polanco") is a citizen of Venezuela who entered the United States on July 8, 2022, and "thereafter turned himself in to U.S. immigration authorities on the U.S. border." [Doc. 1 at ¶¶ 78–79]. "He was held for inspection, background checks[,] and processing," and on

_____

[1] Mr. Valdez and Mr. Blanche are substituted as Respondents, in their official capacities, pursuant to Federal Rule of Civil Procedure 25(d). *See* [Doc. 8 at 1 & n.1; Doc. 9 at 1].

July 11, 2022, the Department of Homeland Security ("DHS") "exercised its discretion to grant Petitioner parole pursuant to 8 U.S.C. § 1182(d)(5) and released him into the United States under conditions of supervision." [*Id.* at ¶ 80]. Mr. Gonzalez Polanco's parole was granted for two months, until September 11, 2022. [Doc. 1-2 at 3; Doc. 8 at 4]. As part of his parole, Mr. Gonzalez Polanco was required to enroll and successfully participate in an Alternatives to Detention program, which included Mr. Gonzalez Polanco being subjected to electronic monitoring. [Doc. 1 at ¶ 81; Doc. 1-2 at 10]. Mr. Gonzalez Polanco complied with all his parole conditions. [Doc. 1 at ¶ 82].

On November 5, 2022, Mr. Gonzalez Polanco received a Notice to Appear in Removal Proceedings. [*Id.* at ¶ 83; Doc. 1-2 at 17–20]. His initial appearance was scheduled for July 10, 2024. [Doc. 1 at ¶ 83; Doc. 1-2 at 17–20]. In the interim, Mr. Gonzalez Polanco applied for asylum and Temporary Protected Status. [Doc. 1 at ¶¶ 84–85]. On July 10, 2024, Mr. Gonzalez Polanco appeared in Immigration Court as ordered, and his hearing was continued to May 28, 2025. [*Id.* at ¶ 86]. On October 8, 2024, Mr. Gonzalez Polanco's application for Temporary Protected Status was granted, with the Temporary Protected Status set to expire on April 2, 2025. [*Id.* at ¶ 85; Doc. 1-2 at 38–39]. Later, Mr. Gonzalez Polanco's hearing that was continued to May 28, 2025 was canceled. [Doc. 1 at ¶ 87].

On September 6, 2025, Mr. Gonzalez Polanco was arrested by United States Immigration and Customs Enforcement ("ICE") at the Salt Lake City airport while attempting to board a domestic flight. [*Id.* at ¶ 89]. The published and publicized motive for his arrest was the allegation that Petitioner is a dangerous individual associated with the Tren de Aragua criminal organization. [*Id.* at ¶¶ 89–91]. During removal proceedings,

Mr. Gonzalez Polanco moved to strike the portion of the Form I-213 that stated this allegation. [*Id.* at ¶ 94; Doc. 1-2 at 45, 75–76]. The immigration judge gave the Government a chance to respond and provide evidence in support of their allegation, but the Government did not do so. [Doc. 1-2 at 75]. The judge thus ruled that there was no foundation for this allegation, striking it from the Form I-213. [Doc. 1 at ¶¶ 95–102; Doc. 1-2 at 75–76]. Nonetheless, the Government continues to detain Mr. Gonzalez Polanco. [Doc. 1 at ¶ 103]. It appears that Mr. Gonzalez has not been provided a bond hearing or an individualized custody determination. *See* [*id.* at ¶ 236; Doc. 8 at 5].

Petitioner contends that Respondents are improperly detaining him under 8 U.S.C. § 1225(b). [Doc. 1 at ¶ 143]. He argues that Respondents are attempting "to avoid the procedural protections that attached under 8 U.S.C. § 1226(a)," and more importantly, his detention has no lawful basis because it "was based on a factual predicate that has been rejected for lack of proof and cannot sustain continued custody." [*Id.* at ¶¶ 43–44, 145–64].

Mr. Gonzalez Polanco asserts three claims for relief: (1) that his arrest and detention is a violation of his Fourth Amendment right to be free of unreasonable seizures ("Count One"), [*id.* at ¶¶ 210–25]; (2) that his detention is a violation of his Fifth Amendment procedural due process rights ("Count Two"), [*id.* at ¶¶ 226–38]; and (3) that his detention is a violation of his Fifth Amendment substantive due process rights ("Count Three"), [*id.* at ¶¶ 239–49]. He asks the Court to "[o]rder [his] immediate release from custody" or "order Respondents to provide [him] with a prompt and constitutionally adequate custody redetermination hearing before an Immigration Judge." [*Id.* at 38]. Mr. Gonzalez Polanco also asks for attorney's fees and costs under the Equal Access to

Justice Act.  [*Id.*].

This matter is fully briefed and ripe for disposition.  No Party has requested an evidentiary hearing or oral argument, and the Court finds that no hearing is necessary. *Garcia Cortes v. Noem*, No. 25-cv-02677-CNS, 2025 WL 2652880, at *1 (D. Colo. Sept. 16, 2025) (declining to hold a hearing where the petitioner's habeas challenge was "fundamentally legal in nature").

## LEGAL STANDARD

Section 2241 of Title 28 authorizes a court to issue a writ of habeas corpus when a person is "in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c)(3).  "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody."  *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973).  "Challenges to immigration detention are properly brought directly through habeas."  *Soberanes v. Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004) (citing *Zadvydas v. Davis*, 533 U.S. 678, 687–88 (2001)).

## ANALYSIS

Mr. Gonzalez Polanco's claims primarily turn on whether Respondents may detain him pursuant to § 1225(b)(2)(A), such that he is not entitled to "the procedural protections that attached under 8 U.S.C. § 1226(a)."  [Doc. 1 at ¶ 44].  The Court summarizes the statutory framework before turning to the claims asserted in this case.

## I.    Statutory Framework

Sections 1225 and 1226 govern detention of noncitizens prior to a final order of removal.  *See Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018).  Section 1226 "sets forth

'the default rule' for detaining noncitizens 'already present in the United States.'" *Quispe-Ardiles v. Noem*, No. 1:25-cv-01382-MSN-WEF, 2025 WL 2783800, at *5 (E.D. Va. Sept. 30, 2025) (quoting *Jennings*, 583 U.S. at 303). This section permits, but does not require, the Attorney General to detain noncitizens pending removal proceedings, subject to certain exceptions not applicable here. *Jennings*, 583 U.S. at 303; 8 U.S.C. § 1226(a)(1)–(2) (the Attorney General "*may* continue to detain" or "*may* release" the noncitizen (emphasis added)). Section 1226(a) thus establishes a discretionary framework for the detention of noncitizens pending removal proceedings.

Section 1225(b) "supplement[s] § 1226's detention scheme." *Rodriguez v. Bostock*, 779 F. Supp. 3d 1239, 1246 (W.D. Wash. 2025) (quoting *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1196 (9th Cir. 2022)). Section 1225(b) "applies primarily to [noncitizens] seeking entry into the United States," i.e., "applicants for admission." *Jennings*, 583 U.S. at 297. This section provides, in relevant part, that "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien *shall* be detained" pending removal proceedings. 8 U.S.C. § 1225(b)(2)(A) (emphasis added).[2]

---

[2] Under 8 U.S.C. § 1225(b)(1), "certain applicants for admission who are deemed inadmissible are subject to expedited removal, unless they express a fear of persecution or an intent to apply for asylum." *Guerrero Orellana v. Moniz*, 802 F. Supp. 3d 297, 304 (D. Mass. Oct. 3, 2025), *appeal docketed*, No. 25-2152 (1st Cir. Dec. 3, 2025); *see also* 8 U.S.C. § 1225(b)(1)(A)(i) (directing an immigration officer to "order [a person deemed inadmissible] removed from the United States without further hearing or review unless [the person] indicates either an intention to apply for asylum . . . or a fear of persecution"). Respondents do not argue that Mr. Gonzalez Polanco is detained pursuant to § 1225(b)(1), *see* [Doc. 8], so the Court does not substantively address detention under this subsection.

Under § 1225(a)(1), an "applicant for admission" is

An alien present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival and including an alien who is brought to the United States after having been interdicted in international or United States waters).

Generally, "detention under § 1225(b)(2) is considered mandatory," and "[i]ndividuals detained under § 1225 are not entitled to a bond hearing." *Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 484 (S.D.N.Y. 2025) (citing *Jennings*, 583 U.S. at 297). "The only exception to the mandatory detention required by section 1225(b) is that 'applicants for admission may be temporarily released on parole "for urgent humanitarian reasons or significant public benefit."'" *Cabrera Martinez v. Marich*, 816 F. Supp. 3d 356, 364 (W.D.N.Y. 2025) (quoting *Jennings*, 583 U.S. at 288); *see also* 8 U.S.C. § 1182(d)(5)(A).

This Court has previously concluded that the plain language of § 1225's "seeking admission" language "requires that the applicant must be presently and actively seeking lawful entry into the United States." *Loa Caballero v. Baltazar*, No. 25-cv-03120-NYW, 2025 WL 2977650, at *6 (D. Colo. Oct. 22, 2025). "The use [of] the present participle in § 1225(b)(2)(A) 'implies action – something that is currently occurring, and in this instance, would most logically occur at the border upon inspection.'" *Id.* (quoting *Lopez-Campos v. Raycraft*, 797 F. Supp. 3d 771, 781 (E.D. Mich. 2025), *aff'd*, 175 F.4th 713 (6th Cir. 2026)). Therefore, Section 1225(b)(2)(A)'s detention framework does not apply to "noncitizens who are just 'present' in the country, who have been here for years upon years and never proceeded to obtain any form of citizenship." *Id.* (quoting *Lopez-Campos*, 797 F. Supp. 3d at 781 (cleaned up)). In *Loa Caballero*, because the petitioner had been present in the United States for several years, he "was not seeking lawful entry into the United States at the time he was detained—he was already here." *Id.* at *7. "He

was thus not 'seeking admission' and [was] not subject to § 1225(b)(2)(A)'s mandatory detention provision." *Id.* The Court has reaffirmed this interpretation on many occasions. *See, e.g.*, *Briales-Zuniga v. Baltazar*, No. 25-cv-03439-NYW, 2026 WL 35227, at *4 (D. Colo. Jan. 6, 2026); *Bautista v. Noem*, No. 26-cv-00272-NYW, 2026 WL 532427, at *4 (D. Colo. Feb. 26, 2026).

## II.    Application to Petitioner's Claims

The Court's analysis begins with Counts Two and Three, the Fifth Amendment due process claims. Respondents argue that § 1225(b)(2)(A) applies and requires Petitioner's detention, so he is not entitled to a bond hearing. *See* [Doc. 8]. This Court, following the clear weight of persuasive authority, has already rejected Respondents' position. *See Loa Caballero v. Baltazar*, No. 25-cv-03120-NYW, 2025 WL 2977650, at *2–7 (D. Colo. Oct. 22, 2025) (interpreting the relevant provisions of §§ 1225 and 1226); *see also id.* at *5 ("[F]ederal courts have overwhelmingly rejected Respondents' 'broad interpretation of section 1225(b)(2).'" (collecting cases)).[3] In *Loa Caballero*, this Court reviewed a similar habeas petition filed by a noncitizen who had resided in the United States for nearly 20 years before he was detained by ICE. *See id.* at *1. Like Mr. Gonzalez Polanco, the

---

[3] In addition to this Court's ruling in *Loa Caballero*, a majority of other judges in this District have concluded that § 1225(b)(2)(A) does not apply to noncitizens similarly situated to Mr. Gonzalez Polanco, who have been present in the country for some time and are not actively "seeking admission." *See, e.g.*, *Mendoza Gutierrez v. Baltasar*, No. 25-cv-02720-RMR, 2025 WL 2962908 (D. Colo. Oct. 17, 2024) (Rodriguez, J.), *appeal docketed*, No. 25-1460 (10th Cir. Dec. 16, 2025); *Moya Pineda v. Baltasar*, No. 25-cv-02955-GPG, 2025 WL 3516291 (D. Colo. Oct. 20, 2025) (Gallagher, J.); *Nava Hernandez v. Baltazar*, No. 25-cv-03094-CNS, 2025 WL 2996643 (D. Colo. Oct. 24, 2025) (Sweeney, J.); *Florez Marin v. Baltazar*, No. 25-cv-03697-PAB, 2025 WL 3677019 (D. Colo. Dec. 18, 2025) (Brimmer, J.); *Aleman Hernandez v. Baltazar*, No. 25-cv-03688-SKC-SBP, 2025 WL 3718159 (D. Colo. Dec. 23, 2025) (Crews, J.); *Garcia Abanil v. Baltazar*, 817 F. Supp. 3d 1148 (D. Colo. 2026) (Martinez, J.). *But see Singh v. Baltazar*, No. 26-cv-01076-DDD-TPO, 2026 WL 1282828 (D. Colo. May 11, 2026) (Domenico, C.J.).

Government did not provide the petitioner in *Loa Caballero* with a bond hearing because it claimed that § 1225 mandated his detention. *See id*. This Court disagreed, emphasizing that § 1225(b)(2)(A) only provides for mandatory detention of noncitizens "seeking admission" to the country. *Id.* at *6. "The plain meaning of the phrase 'seeking admission' requires that the applicant must be presently and actively seeking lawful entry into the United States." *Id.* Thus, noncitizens who are merely "present"—and have been for "years upon years" without obtaining legal status—are not "seeking admission" under § 1225(b)(2)(A). *Id.* (quoting *Lopez-Campos v. Raycraft*, 797 F. Supp. 3d 771, 781 (E.D. Mich. 2025)).

The Court also explained that interpreting § 1225(b)(2)(A) to mandate detention for all "applicants for admission" would render the "seeking admission" language superfluous. *Id.* at *7. The Court concluded that both the plain text of § 1225 and applicable canons of statutory interpretation demonstrated that the petitioner in *Loa Caballero* was detained under § 1226, not § 1225. *See id.* at *5–8. The Court has since reaffirmed its ruling in *Loa Caballero* in several other similar habeas cases. *See, e.g.*, *Briales-Zuniga v. Baltazar*, No. 25-cv-03439-NYW, 2026 WL 35227, at *4 (D. Colo. Jan. 6, 2026); *Bautista v. Noem*, No. 26-cv-00272-NYW, 2026 WL 532427, at *4 (D. Colo. Feb. 26, 2026).

Respondents acknowledge that the issue presented in this case "is not materially different" than *Loa Cabellero*, *see* [Doc. 8 at 2],[4] and provide no persuasive reason for

---

[4] "[T]o expedite disposition of this case," Respondents attached to their Response, "rel[ied] upon, and incorporate[d] by reference, the legal arguments Respondents presented on this issue in *Mendoza Gutierrez v. Baltazar*, Civil Action No. 25-cv-02720-RMR, ECF No. 26 at 10–19." [Doc. 8 at 4]. The Court is not persuaded by this briefing for the same reasons as explained in this Order.

the Court to depart from the conclusion it reached in that case.[5]  Nor has the Tenth Circuit yet addressed the issue, as Respondents recognize.[6]  *See* [*id.* at 3].  And although Respondents preserve their arguments to the contrary, they concede that the Court's ruling in *Loa Caballero* will "lead the Court to reach the same result here."  *See* [*id.* at 4].

Consistent with the Court's prior rulings and the weight of authority in this District, the Court concludes that § 1225(b)(2)(A) does not authorize Respondents' detention of Mr. Gonzalez Polanco.  The "default rule" of discretionary detention under § 1226(a) therefore applies.  *See, e.g.*, *Quispe-Ardiles*, 2025 WL 2783800, at *5, *7.

---

[5] Respondents make a brief argument that because Mr. Gonzalez Polanco was initially processed into the United States under 8 U.S.C. § 1225(b)(2) and temporarily paroled pursuant to 8 U.S.C. § 1182(d)(5)(A), once that parole expired, Mr. Gonzalez Polanco "reverted to the same status he held prior to his parole."  [Doc. 8 at 4–5].  But this Court has already rejected Respondents' interpretation of § 1182(d)(5)(A).  *See* *Abdyrakhmanov v. Baltazar*, No. 26-cv-01875-NYW, 2026 WL 1800941, at *3–6 (D. Colo. June 23, 2026) (a noncitizen who was temporarily paroled under § 1182(d)(5)(A) nearly three years prior to detention and was not detained until nine months after his parole expired was not "seeking admission" and therefore his detention was governed by § 1226(a)).  Mr. Gonzalez Polanco's temporary parole expired *nearly three years* before he was detained.  [Doc. 1 at ¶ 19 (parole expired on September 11, 2022), ¶ 89 (Petitioner arrested on September 6, 2025)].  Other than the period of time during which Mr. Gonzalez Polanco had Temporary Protected Status, [Doc. 1-2 at 38–39 (from October 8, 2024 to April 2, 2025)], he was "unlawfully present in the United States" for those three years, 8 U.S.C. § 1182(a)(9)(B)(ii), and his "detention must be dealt with in the same manner as any other noncitizen already present in the United States, i.e., under § 1226(a)," *Abdyrakhmanov*, 2026 WL 1800941, at *6 (quotations omitted).

[6] The courts of appeals to consider Respondents' interpretation of § 1225(b)(2)(A) have split.  *Compare Cunha v. Freden*, 175 F.4th 61 (2d Cir. 2026) (rejecting Respondents' interpretation), *Hernandez Alvarez v. Warden, Fed. Det. Ctr. Mia.*, 175 F.4th 1258 (11th Cir. 2026) (same), *and Castañon-Nava v. U.S. Dep't of Homeland Sec.*, 161 F.4th 1048, 1062 (7th Cir. 2025) (concluding at preliminary stage that DHS was unlikely to succeed on the merits of its argument), *with Avila v. Bondi*, 170 F.4th 1128 (8th Cir. 2026) (affirming Respondents' interpretation), *and Buenrostro-Mendez v. Bondi*, 166 F.4th 494 (5th Cir. 2026) (same).  Given that the arguments on both sides are now well-worn, the Court need not go further than to note that the Fifth and Eighth Circuits' decisions, although thorough, do not bind or persuade this Court to reconsider its analysis of this issue.  *See Garcia Bautista*, 2026 WL 532427, at *3 n.3.

Having determined that § 1226(a) governs Petitioner's detention, the Court concludes that his detention without a bond hearing violates his due process rights.[7] Because Petitioner is detained under § 1226(a), at a minimum "the process due to him is that which is afforded under [§ 1226(a)]." *Lopez-Campos*, 797 F. Supp. 3d at 785. And that process is an individualized bond determination. *See, e.g.*, *Velasquez Salazar v. Dedos*, 806 F. Supp. 3d 1231, 1241 (D.N.M. 2025) (describing the process owed under § 1226 as "an individualized bond hearing before an [immigration judge]"); *Hyppolite v. Noem*, 808 F. Supp. 3d 474, 485 (E.D.N.Y. 2025) ("[Section] 1226(a) requires an individualized bond determination."). The Court thus concurs with the numerous other district courts that have held that denying a bond hearing to a noncitizen detained under § 1226(a) violates the noncitizen's due process rights. *See, e.g.*, *Garcia Cortes*, 2025 WL 2652880, at *4; *Lopez-Campos*, 797 F. Supp. 3d at 784–85; *Garcia Abanil v. Baltazar*, 817 F. Supp. 3d 1148, 1158 (D. Colo. 2026). The Court will **GRANT** the Petition as to Mr. Gonzalez Polanco's Fifth Amendment due process claims. As a result of this ruling, the Court need not reach Count One, the Fourth Amendment claim.

## III.    Appropriate Remedy

In the Petition, Mr. Gonzalez Polanco asks the Court to order Respondents to either release him immediately or provide a "prompt and constitutionally adequate" bond hearing. [Doc. 1 at 38]. In his Reply, however, Mr. Gonzalez Polanco argues that "[a] bond hearing would be an empty exercise" where "Respondents have no remaining

---

[7] Respondents do not address Mr. Gonzalez Polanco's allegations of due process violations and do not dispute that noncitizens detained under § 1226(a) are entitled to an individualized custody determination. *See* [Doc. 8].

justification for detaining Petitioner." [Doc. 9 at 16]; *see also* [*id.* at 14 ("The immigration judge's finding that the sole basis for re-detention was 'wholly unsubstantiated' independently requires immediate release." (emphasis omitted))]. Mr. Gonzalez Polanco contends that "[t]he only basis for [his] re-detention was the allegation that he was affiliated with Tren de Aragua," and that was stricken from the Form I-213 record by the immigration judge overseeing Petitioner's removal proceedings. [*Id.* at 14]. But the allegation of gang affiliation was not the "only basis" for initiating removal proceedings. Indeed, the Form I-213 provided by Mr. Gonzalez Polanco shows that Mr. Gonzalez Polanco was charged with being removable as an "immigrant without an immigrant visa" and an "alien present without admission or parole." [Doc. 1-2 at 44 (emphasis omitted)]; *see also* [*id.* at 45 (alleging, in section entitled "Removability," that Petitioner "is removable" . . . "as an alien present in the United States without being admitted or paroled")]. And as far as the record in front of the Court, Mr. Gonzalez Polanco did not challenge those two charges; nor did the immigration judge strike them from the Form I-213 during removal proceedings. *See* [*id.* at 75–76 (only considering the allegation regarding Tren de Aragua affiliation)].

These facts do not persuade the Court to depart from the well-established principle in this District that § 1226(a) "does not require release—it provides DHS the discretion to grant an alien release on bond." *Nava Hernandez v. Baltazar*, No. 25-cv-03094-CNS, 2025 WL 2996643, at *8 (D. Colo. Oct. 24, 2025). This Court has held on numerous occasions that a bond hearing before an immigration judge is sufficient to vindicate the procedural protections afforded by § 1226(a). *See, e.g., Loa Caballero*, 2025 WL 2977650, at *9; *Briales-Zuniga*, 2026 WL 35227, at *4. Therefore, the Court finds, as in

its prior cases, that an immigration judge is better suited than this Court to conduct the § 1226(a) bond hearing and consider whether Mr. Gonzalez Polanco poses a flight risk or danger to the community.

While neither Party addresses the issue, the Court has also held that for petitioners like Mr. Gonzalez Polanco—who were erroneously subjected to mandatory detention under § 1225(b)(2)—due process requires that the burden of proof at the bond hearing be borne by the Government.  *See, e.g.*, *Diaz Lopez v. Noem*, No. 25-cv-04089-NYW, 2026 WL 206220, at *5 (D. Colo. Jan. 27, 2025) (addressing the issue absent substantive briefing from the parties); *Martinez Escobar v. Baltazar*, No. 26-cv-00296-NYW, 2026 WL 503313, at *5 (D. Colo. Feb. 24, 2026) (similar); *see also Garcia Abanil*, 917 F. Supp. 3d at 1159 ("[T]he weight of authority in this District is clear:  it is the Government's burden to justify a noncitizen's continued detention at a bond hearing." (cleaned up) (collecting cases)).  The Court further concurs with the decisions concluding that "the clear and convincing standard that generally applies to civil detention where liberty is at stake is appropriate here as well."  *Arredondo v. Baltazar*, No. 25-cv-03040-RBJ, 2025 WL 4083607, at *4 (D. Colo. Oct. 31, 2025) (quotation omitted); *see also Martinez Escobar*, 2026 WL 503313, at *5 (collecting cases).

Accordingly, Respondents are **ORDERED** to provide Petitioner a bond hearing no later than **July 7, 2026**.  At this hearing, the Government shall bear the burden of proving, by clear and convincing evidence, that Petitioner's continued detention is justified.  **If Respondents do not provide Petitioner with a bond hearing under 8 U.S.C. § 1226(a) as required herein, he must be immediately released from detention.**  On or before **July 14, 2026**, the Parties shall file a joint status report concerning (1) the results of any

12

bond hearing that was conducted or, if no hearing was held, advise the Court of the date Petitioner was released from custody; and (2) whether any additional proceedings in this matter are required.

Because this Court has granted the relief Petitioner seeks, the Emergency Motion for Immediate Release and Request for Temporary Restraining Order, [Doc. 2], which asks the Court to order Respondents to immediately release him or provide him with a prompt bond hearing, [*id.* at 25], is respectfully **DENIED as moot**.[8]

### CONCLUSION

For the reasons set forth above, **IT IS ORDERED** that:

(1)    The Petition for Writ of Habeas Corpus [Doc. 1] is **GRANTED in part** as set forth herein;

(2)    Respondents shall provide Petitioner a bond hearing no later than **July 7, 2026**, at which the Government will bear the burden of proving, by clear and convincing evidence, that Petitioner's continued detention is justified. **If Respondents do not provide Petitioner with a bond hearing under 8 U.S.C. § 1226(a) as required herein, Petitioner must be immediately released from detention**;

(3)    On or before **July 14, 2026**, the Parties shall file a joint status report concerning (1) the results of any bond hearing that was conducted or, if no hearing was held, advise the Court of the date Petitioner was released from

---

[8] Petitioner also seeks attorney's fees and costs under the Equal Access to Justice Act. [Doc. 1 at 38]; *see also Daley v. Ceja*, 158 F.4th 1152, 1166 (10th Cir. 2025). But this District's Local Rules require that those requests be made by separate motion. *See* D.C.Colo.LCivR 54.3. A fee award is thus inappropriate at this juncture.

13

custody; and (2) whether any additional proceedings in this matter are required; and

(4)     The Emergency Motion for Immediate Release and Request for Temporary Restraining Order [Doc. 2] is **DENIED as moot**.

DATED:  June 29, 2026                                    BY THE COURT:

_____
Nina Y. Wang
United States District Judge