**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge Nina Y. Wang**

Case No. 26-cv-01241-NYW

SAMUEL MAURICIO GONZALEZ POLANCO,

Petitioner,

v.

JUAN BALTAZAR, in his official capacity,
GEORGE VALDEZ, in his official capacity,
DAVID VENTURELLA, in his official capacity,
MARKWAYNE MULLIN, in his official capacity, and
TODD BLANCHE, in his official capacity,

Respondents.

---

**ORDER**

---

This matter is before the Court on Petitioner's Motion to Enforce the Court's June 29, 2026 Memorandum Opinion and Order and for Immediate Release (the "Motion" or "Motion to Enforce"). [Doc. 12]. Respondents filed a response stating that they "are not submitting a brief in opposition to the Motion," [Doc. 14], and Petitioner replied, [Doc. 15]. For the reasons set forth below, the Motion is respectfully **DENIED**.

**BACKGROUND**

Petitioner Samuel Mauricio Gonzalez Polanco ("Petitioner" or "Mr. Gonzalez Polanco") is a citizen of Venezuela who entered the United States without inspection on July 8, 2022. [Doc. 1 at ¶ 78]. He thereafter turned himself in to U.S. immigration authorities at the border, and on July 11, 2022, DHS paroled Mr. Gonzalez Polanco into the United States pursuant to 8 U.S.C. § 1182(d)(5). [*Id.* at ¶¶ 79–80]. He was detained

by ICE officers in September 2025. [*Id.* at ¶ 4].

On March 24, 2026, Mr. Gonzalez Polanco filed a petition for a writ of habeas corpus to challenge the legality of his detention. *See* [*id.*]. This Court granted in part the petition in June of 2026 and ordered Respondents to provide Mr. Gonzalez Polanco with a bond hearing pursuant to 8 U.S.C. § 1226(a). [Doc. 11 at 13]. The Court further ordered that at the bond hearing "the Government will bear the burden of proving, by clear and convincing evidence, that Petitioner's continued detention is justified." [*Id.*].

A bond hearing was held on July 2, 2026, and bond was denied in a written order on July 3, 2026. [Doc. 12; Doc. 12-1 at 2–5, 10–15]. The immigration judge ("IJ") found that DHS "did not meet its burden of proof that Respondent is a danger to community by clear and convincing evidence," but found that release "would present an unacceptable flight risk." [Doc. 12-1 at 4]; *see also* [Doc. 12 at 6]. The IJ made the following findings in support of that conclusion: (1) "limited presence in the United States, having entered July 8, 2022"; (2) "very limited community ties," with his infant daughter being "[t]he only assured family member . . . in the United States"; (3) the supporting affidavits "clearly show[]" that Mr. Gonzalez Polanco "has a stronger [tie] to the community in Venezuela than to a community in the United States"; (4) Mr. Gonzalez Polanco's asylum application has been pretermitted and he has been ordered removed (which Petitioner is appealing); and (5) Mr. Gonzalez Polanco "has no future hearings with the Court." [Doc. 12-1 at 4–5]. The IJ cited numerous BIA cases in support of the factors that she considered and her conclusion that "DHS met its burden of proof by clear and convincing evidence [that] [Petitioner]'s ongoing detention is justified because his release would pose a significant risk of flight that no amount of bond or combination of conditions could mitigate." [Doc.

12-1 at 5].

Mr. Gonzalez Polanco filed the Motion to Enforce on July 14, 2026, arguing that the IJ applied the wrong burden framework and failed to address "the most probative record evidence on flight risk." [Doc. 12 at 2–3]. In response, Respondents stated that they "are not submitting a brief in opposition to the Motion." [Doc. 14 at 1]. Petitioner replied and urged the Court to find that the bond hearing that Mr. Gonzalez Polanco received was not constitutionally adequate and order, as a remedy, immediate release. [Doc. 15].

On October 20, 2026, Mr. Gonzalez Polanco filed a Request for Status and Ruling on Submitted Motion to Enforce, requesting that the Court adjudicate the Motion to Enforce.[1] [Doc. 16]. On November 6, 2026, Mr. Gonzalez Polanco filed an Emergency Renewed and Supplemental Motion for Immediate Release, or in the Alternative, for Release Pending Ruling on Motion to Enforce ("Renewed Motion") citing new Tenth Circuit decision. [Doc. 17]. In the Renewed Motion, Mr. Gonzalez Polanco cites *Santillan Quiroz v. Mullin*, 180 F.4th 1226 (10th Cir. 2026) for the proposition that 8 U.S.C. § 1225 does not apply to him, and *Abedi v. Carter*, --- F.4th ----, 2026 WL 3149141 (10th Cir. Oct. 21, 2026) for the propositions that the Government violating its regulations is "per se

[1] While this Court recognizes and understands that Petitioner and his counsel are eager for a ruling on the Motion to Enforce, this Court respectfully requests that parties refrain from filing such motions that seek nothing more than adjudication of a pending motion. As counsel should appreciate, the judicial officers in this District are not only facing unprecedented numbers of immigration matters, but also of civil actions overall. This Court assures the Petitioner and his counsel that it is working as efficiently as possible. Additional filings such as the Request for Status and Ruling on Submitted Motion to Enforce [Doc. 16] are not contemplated by the Federal Rules of Civil Procedure, the District of Colorado's Local Rules of Practice – Civil, or this Court's Uniform Practice Standards. Nor are they helpful.

prejudicial" and that a petition is not moot even when a petitioner is released if the court's order granting release des not explicitly prohibit re-detention. [*Id.* at 4–7]. Mr. Gonzalez Polanco also argues that "circumstances have changed" since he filed the Motion to Enforce because DHS has failed to file any opposition to his appeal to his pretermission and removal order. [*Id.* at 8].

**ANALYSIS**

"Courts of justice are universally acknowledged to be vested, by their very creation, with power to impose . . . submission to their lawful mandates." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991) (quoting *Anderson v. Dunn*, 19 U.S. (6 Wheat.) 204, 227 (1821)). In exercising this authority, the Court emphasizes that the scope of its review is limited. The INA provides that "[t]he Attorney General's discretionary judgment regarding the application of [§ 1226] shall not be subject to review" and "[n]o court may set aside any action or decision by the Attorney General under this section regarding the detention of any alien or the revocation or denial of bond or parole." 8 U.S.C. § 1226(e). Section 1226(e) thus "precludes an alien from challenging a discretionary judgment by the Attorney General or a decision that the Attorney General has made regarding his detention or release." *Jennings v. Rodriguez*, 583 U.S. 281, 295 (2018) (cleaned up). But "[w]hether [a petitioner] received the due process to which he was entitled 'is not a matter of discretion' and is subject to judicial review." *Velasco Lopez v. Decker*, 978 F.3d 842, 850 (2d Cir. 2020) (quoting *Zadvydas v. Davis*, 533 U.S. 678, 688 (2001)).

Accordingly, the Court's review of Mr. Gonzalez Polanco's bond hearing "is limited to whether it satisfied due process or otherwise suffered some defect that rendered it noncompliant with" the Court's prior Order. *Trejo v. Bullock*, No. 3:26-cv-00047, 2026 WL

598391, at *2 (E.D. Tenn. Mar. 3, 2026); *see also, e.g.*, *Castillo v. Field Off. Dir.*, No. 25-cv-25296, 2025 WL 4689387, at *5 (S.D. Fla. Dec. 19, 2025) ("Courts have repeatedly concluded that § 1226(e) does not preclude challenges to the procedures used in custody determinations under § 1226." (collecting cases)). The Court cannot and does not reweigh the evidence or "serv[e] as an appellate court over [the] IJ's bond decision." *Quiroz Zacarias v. Mullin*, No. 26-cv-00574-WJM, 2026 WL 1092162, at *3 (D. Colo. Apr. 22, 2026).

Mr. Gonzalez Polanco takes issue with numerous aspects of the Court's order: (1) the IJ "analyzed bond under the ordinary framework in which the noncitizen bears the burden of justifying release"; (2) the IJ "drew every inference against Mr. Gonzalez Polanco, inverting the ordered burden"; (3) "[t]he flight-risk determination is categorical, resting on the existence of a non-final, stayed removal order, which is precisely what an individualized determination forbids"; (4) the IJ "makes no individualized finding on conditions of release and ignores the most probative record evidence of appearance"; (5) the IJ's "findings that do appear rest on demonstrable error."[2] [Doc. 12 at 9–14]. The Court addresses the burden argument first and then Petitioner's substantive arguments about the IJ's decision.

**Burden.** While Petitioner is correct that the IJ's Order states in the "Legal Standard" section that a noncitizen "who fails to meet his burden will properly be denied bond," [Doc. 12-1 at 4], this Court respectfully disagrees with Petitioner's contention that the IJ "invert[ed] the ordered burden," [Doc. 12 at 3]. The "Analysis" section of the Order

---

[2] Mr. Gonzalez Polanco does not state any "demonstrable error" with the evidence that the IJ relied on in her order. *See* [Doc. 12 at 13–14]. Instead, he takes issue with the inferences that the IJ made from the evidence. *See* [*id.*].

makes clear that the IJ applied the proper burden as previously ordered by this Court. The IJ starts off her analysis by noting that "DHS did not contest that, per the District Court order, . . . DHS bears the burden of proof to demonstrate by clear and convincing evidence that [Petitioner] is a flight risk or danger to community." [Doc. 12-1 at 4]. She then "finds that DHS *did not meet its burden of proof* that [Petitioner] is a danger to community by clear and convincing evidence," [*id.* (emphasis added)], but "that DHS *met its burden of proof by clear and convincing evidence*" regarding flight risk, [*id.* at 5 (emphasis added)]. While Petitioner points to the IJ's citation to administrative decisions to establish that the IJ failed to apply the correct burden of proof, the IJ's citation to these cases does not indicate that she failed to comply with the Court's Order, as the IJ cited those cases for propositions other than the burden of proof, i.e., what factors she considered in making her substantive determinations regarding release on bond. *See* [Doc. 12 at 9–10; Doc. 12-1 at 3–4].

Accordingly, the Court declines to grant the Motion on the basis that the IJ applied the improper burden.

**The IJ's findings.** The Court also respectfully disagrees with Mr. Gonzalez Polanco's contention that the IJ failed to conduct an individualized determination of flight risk. Indeed, the IJ's conclusion that "Respondent's ongoing detention is justified because his release would pose a significant risk of flight that no amount of bond or combination of conditions could mitigate" rests on multiple findings based on the evidence presented: (1) Petitioner's presence in the United States is "limited," given that he has been residing in the United States for about four years; (2) Petitioner has "very limited community ties," with only one "assured family member" in the United States; (3) Petitioner's asylum

application has been pretermitted and he has been ordered removed; and (4) Petitioner has no future hearings in immigration court. [*Id.* at 4–5]. And the IJ's failure to discuss, in her written order, what Mr. Gonzalez Polanco considers "the most probative record evidence" on the flight risk determination is not a due process violation, but rather a disagreement as to the weight of the evidence. *See, e.g.*, *Telyatitskiy v. Holder*, 628 F.3d 628, 631 (1st Cir. 2011) ("An IJ does not err merely by failing to address specifically each piece of evidence the petitioner presented."); *Molina-Diaz v. Bondi*, 128 F.4th 568, 577 (4th Cir. 2025) (recognizing that an IJ is "not required to discuss every piece of evidence in the record" (quotation omitted)). Regardless of whether it believes that the IJ should have considered the evidence differently, this Court lacks subject matter jurisdiction to engage in such a substantive analysis and respectfully finds that the IJ's analysis constitutes a constitutionally adequate individualized determination.

Petitioner's other arguments—including his contention that the IJ "drew every inference against Mr. Gonzalez Polanco"—again invite the Court to reweigh the evidence presented at the bond hearing to reach a decision contrary to the IJ, which the Court cannot do. *See* 8 U.S.C. § 1226(e); *Garcia*, 817 F. Supp. 3d at 126 (holding that a habeas court "has no authority to encroach upon an IJ's discretionary weighing of the evidence" (quoting *Diaz-Calderon v. Barr*, 535 F. Supp. 3d 669, 676 (E.D. Mich. 2020))). To be sure, some courts have recognized that a noncitizen may show a constitutional error where "'the evidence itself could not—as a matter of law—have supported' the IJ's decision to deny bond." *Garcia v. Hyde*, 817 F. Supp. 3d 112, 126 (D.R.I. 2025) (quoting *Hechavarria v. Whitaker*, 358 F. Supp. 3d 227, 240 (W.D.N.Y. 2019)); *accord, e.g.*, *Perez Velasquez v.*

*Bondi*, No. 26-cv-01759-GPC-DDL, 2026 WL 1042479, at *6 (S.D. Cal. Apr. 16, 2026).[3] But agency precedent permits an IJ to consider a broad swath of "probative and specific" evidence when making a bond determination. *See In re Guerra*, 24 I. & N. Dec. 37, 40 (B.I.A. 2006) (setting out nine non-exclusive factors covering a noncitizen's ties to the United States and immigration history, among other things). Relevant here, an IJ may consider the noncitizen's "length of residence in the United States," his "family ties in the United States," and "the likelihood that relief from removal will be granted in determining whether an alien warrants bond." *Matter of R-A-V-P-*, 27 I. & N. Dec. 803, 805 (B.I.A. 2020).

---

[3] Although they do not bind this Court, other district court decisions illustrate the type of fundamental evidentiary error that amounts to a due process violation. In *Castillo v. Field Office Director*, for instance, the IJ began the bond hearing by admitting that he "had not had a chance to review anything that's been filed" and was not "able to prepare properly." 2025 WL 4689387, at *7 (brackets omitted). But the IJ nevertheless announced a decision at the conclusion of the hearing and denied bond based on Government counsel's unsupported allegation that the noncitizen possessed Child Sexual Assault Material and a "vague, unsworn [and uncorroborated] hearsay statement from an unknown source" that the noncitizen was a gang member. *Id.* at *3, *6–7. In *D.Y.E.H. v. Warden, Irwin Detention Center*, the IJ "equate[d] the mere fact of being in removal proceedings with a categorical presumption of flight risk" and denied bond on that basis, despite the fact that the Government never raised flight risk as grounds for denying bond. 839 F. Supp. 3d 1170, 1183–84 (M.D. Ga. 2026). And in *Garcia v. Hyde*, a district court granted relief where the IJ denied bond based on dangerousness by relying on a decade-old Guatemalan arrest warrant, even though no one knew what the charges were and the noncitizen presented evidence that the warrant was no longer active. 817 F. Supp. 3d at 127–29.

In these cases and others, courts have granted relief on constitutional grounds where the IJ either relied on non-probative evidence outside the considerations permitted by agency precedent, *see Perez Velasquez*, 2026 WL 1042479, at *6 (finding that IJ misapplied clear-and-convincing standard by disregarding the *Guerra* factors and "instead rely[ing] on three pieces of evidence that bear little if any relevance to [p]etitioner's risk of flight" (quotation omitted)), or imposed a rule that "would lead to an automatic denial of bond in all cases" without any individualized analysis, *Alvarado Lopez v. Dillman*, 1:25-cv-2456-LMB-LRV, 2026 WL 688958, at *6 (E.D. Va. Mar. 11, 2026) (quotation omitted), *appeal docketed sub nom.*, *Alvarado Lopez v. Guadian*, No. 26-6602 (4th Cir. May 14, 2026).

The IJ here based her decision on the *Guerra* factors and used her discretion to decide which factors to consider and how much weight to afford each factor. *See Guerra*, 24 I. & N. Dec. at 40. While Petitioner may wish that the IJ weighed the evidence differently, the Court concludes that the evidence relied on can support a denial of bond "as a matter of law." *Garcia*, 817 F. Supp. 3d at 126 (quotation omitted). And the Court lacks jurisdiction to review the IJ's discretionary determination that such evidence weighs heavily enough to satisfy the clear-and-convincing standard. *See* 8 US.C. § 1226(e). Having satisfied itself that Petitioner's bond hearing complied with this Court's Order and the requirements of due process, the Court need not go further. The Motion to Enforce is respectfully **DENIED**.[4]

**CONCLUSION**

For the reasons set forth above, **IT IS ORDERED** that:

(1) Petitioner's Motion to Enforce the Court's June 29, 2026 Memorandum Opinion and Order and For Immediate Release [Doc. 12] is **DENIED**;

---

[4] The Renewed Motion does not change this Court's analysis. First, the Court has already found that Mr. Gonzalez Polanco is detained pursuant to 8 U.S.C. § 1226 and not § 1225(b); thus, *Santillan Quiroz v. Mullin* does not alter the outcome. *See* [Doc. 17 at 4–5; Doc. 11 at 9]. Second, Petitioner's citation to a case in this District where Judge Neureiter granted a motion to enforce and ordered immediate release of the petitioner is not relevant here because this Court denies Petitioner's Motion to Enforce. *See* [Doc. 17 at 5–6]. Further, the Tenth Circuit's decision in *Abedi v. Carter* is not relevant to Petitioner's circumstances. *See* [*id.* at 7]. Finally, Petitioner's argument that "DHS has not defended on appeal" his order of removal is another attempt to request that this Court reweigh the evidence considered by the IJ. [*Id.* at 8 (arguing that "[a] pending, unopposed appeal from a non-final order whose own terms contemplate reopening does not supply clear and convincing evidence that Petitioner will flee; it supplies every reason for him to remain and litigate"]. As the Court previously explained, it cannot and does not reweigh the evidence or "serv[e] as an appellate court over [the] IJ's bond decision." *Quiroz Zacarias*, 2026 WL 1092162, at *3. Therefore, the Renewed Motion is respectfully **DENIED**.

(2) The Emergency Renewed and Supplemental Motion for Immediate Release, or in the Alternative, for Release Pending Ruling on Motion to Enforce [Doc. 17] is **DENIED**;

(3) Because Petitioner has received the relief to which he is entitled, *see* [Doc. 11], Petitioner is awarded his costs pursuant to D.C.COLO.LCivR 54.1; and

(4) The Clerk of Court is **DIRECTED** to terminate the case and enter judgment in favor of Petitioner.

DATED: November 17, 2026

BY THE COURT:

Nina Y. Wang
United States District Judge